HENRY A. WESS, INC. (HUTCHINSON BROS. LEATHER CO.) *v.* UNITED STATES

**No. 5993.**—Invoices dated Kitchener, Ontario, May 5, 1941, etc.
 Certified May 7, 1941, etc.
 Entered at Cincinnati, Ohio, May 15, 1941, etc.
 Entry No. 749, etc.

Second Division, Appellate Term

(Decided April 5, 1944)

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the appellant.
 *Paul P. Rao,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the appellee.

Before Tilson, Kincheloe, and Lawrence, Judges

Lawrence, Judge: This is an application for a review of the decision and judgment of the trial court, Judge Walker, sitting as a single judge (Reap. Dec. 5939).

The merchandise consists of four shipments of cowhide leather exported from Canada in May, June, and July 1941, pursuant to an order accepted by the manufacturer on April 5, 1941.

Although the invoices describe three different grades of leather, namely, TR, D, and DX, the appeals for reappraisement are limited to the DX grade which was invoiced and entered at a price of 19 cents per square foot, U. S. currency, f. o. b. Kitchener, Ontario, Canada, but which was appraised at 20 cents per square foot, U. S. currency, net, packed, representing export value (sec. 402 (d) of the Tariff Act of 1930).

In passing, it may be noted that the TR and D grades were invoiced, entered, and appraised at 20 cents per square foot, U. S. currency.

Appellant contends that the DX grade, with which we are here primarily concerned, is of a lower grade than either of the other two grades, and accordingly should be appraised at a lower value.

While the record discloses that on April 5, 1941, when the manufacturer accepted the order for the shipment here in controversy, the price for the DX grade was 19 cents per square foot, U. S. currency, it also appears that on April 17, 1941, which was prior to any of the present shipments, the price for the DX grade was advanced to 20 cents per square foot, U. S. currency, as disclosed by the following extract from a letter (exhibit B herein), dated August 7, 1941, addressed to the importer by the shipper:

The leather included in our shipments of May 7 and 22, and July 19, to which you refer, were shipped against Hutchinson Brothers' order of April 5, and when this order was accepted, we felt that the price of 20¢ for the first two grades and 19¢ for the third grade, was a fair price for the entire selection. However, on April 17, when we accepted their order #5475, we felt that we should have a little higher price for the three grades, and this was arranged by increasing the price of DX to 20¢.

There being no evidence of sales or offers for sale of the DX grade leather subsequent to April 17, 1941, at a price other than 20 cents per square foot, U. S. currency, we are governed in the conclusion we have reached by the decision of our appellate court in *White Lamb Finlay, Inc.* v. *United States*, 29 C. C. P. A. (Customs) 199, C. A. D. 192. It was there held, in substance, that, where the market value of merchandise rises between the date of purchase and the date of exportation in the case of goods not carried in stock but freely offered for sale to all purchasers for future delivery, the market value on or about the latter date must be taken for appraisement purposes.

It is the contention of appellant, nevertheless, that the DX grade should be appraised at a lower value than the TR and D grades because it is inferior in quality to either one of those grades. However, notwithstanding the differences in quality which exist in the three grades, the record clearly establishes that in the ordinary course of trade in Canada the manufacturer freely offered for sale the DX grade of cowhide leather in the usual wholesale quantity to all purchasers at or about the time of exportation in conjunction only with other grades of better quality cowhide leather at 20 cents per square foot, U. S. currency.

With respect to the ordinary course of trade in Canada for this commodity, the following testimony of appellant's witness, Yeager, sole manager for the importer, is significant:

Q. In this order of April 17, 1941, now marked exhibit 8, I note the words appearing in parenthesis "Not more than 15% to be DX." Will you please explain why, in ordering, you required that maximum of 15 percent should be DX?—A. The DX selection is the poor selection, and it seems in Canada they don't make the distinction in price but they have a certain percentage of No. 1, and No. 2, and No. 3 in each shipment, and we had to do that on our Canadian purchases, and Mr. Lang explained to me that it would all have to be billed at 20 cents, but it wouldn't be more than 15 percent of DX. That is the way we bought it.

Q. And that, then, is your explanation of why on and after this April 17th order you were required to pay the same price for the DX?—A. That is right.

This testimony corroborates the following extract from exhibit B, *supra:*

The Special Willow Cowhide we sell to Hutchinson is made especially for the U. S. market, and as our outlet is to only a few customers, we cannot sell the top grades without including the amount we receive in the lower grade, but must sell the leather as it comes from our sorting table; that is, we must include the three grades as produced.

We accordingly find as facts:

1. That export value, as defined in section 402 (d) of the Tariff Act of 1930, is the proper basis for determining the value of the merchandise in controversy.

2. That the DX grade of cowhide leather involved in these shipments was freely offered for sale in the usual wholesale quantity to all purchasers in the principal markets of Canada for exportation to the United States on or about the dates of exportation in the ordinary course of trade at 20 cents per square foot, U. S. currency, net, packed.

We therefore affirm the decision and judgment of the court below.

Judgment will be entered accordingly.